# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JUANITA DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | NO. CIV-10-0743-HE |
| | ) | |
| HEALTH FOOD ASSOCIATES, INC. | ) | |
| d/b/a AKIN'S NATURAL FOODS, | ) | |
| ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

In this case, plaintiff Juanita Davis asserts claims against defendants Health Food Associates, Inc. d/b/a Akin's Natural Foods ("Akin's") and Chamberlains Natural Food Markets ("Chamberlain"). She alleges claims under Title VII and 42 U.S.C. § 1981 based on race, sex and religious belief. She also asserts state law claims for negligence and intentional infliction of emotional distress. Defendants have moved for summary judgment as to all claims. Plaintiff has responded and the motion is at issue.

## BACKGROUND

Plaintiff was employed by Akin's as a cashier from June 2007 to May 9, 2009. She was terminated by Akin's on the latter date for the stated reason of plaintiff having violated Akin's policies as to employee discounts. Akin's formal policy permitted their employees to take a discount on products purchased from Akin's, but the discount was to be limited to sales to the employee and the employee's immediate family.[1] The policy also required that

---

[1] *Plaintiff has submitted evidence that the actual practice sanctioned by at least lower-level supervisors was, at various times, otherwise.*

sales involving employee discounts be "rung up" by a different employee. After being questioned about it in early May 2009, plaintiff acknowledged she had allowed use of her employee discount for non-family members. She was then terminated.

Plaintiff has submitted evidence (largely, though not entirely, her own testimony) that she was discriminated against in various ways, based on the fact that she is African-American, heterosexual and a Christian. She asserts that various managers or employees of Akin's made comments or took various discriminatory actions during the entire course of her employment directed to or implicating those factors and that her termination was motivated by some or all of those factors.

On June 24, 2009, plaintiff filed a charge of discrimination with the EEOC alleging discrimination based on race, sex and religion. Her "right to sue" letter was issued the same day and, among other things, advised plaintiff of her right to file suit on her claims within 90 days. On September 19, 2009, plaintiff, proceeding *pro se*, filed suit in state court alleging wrongful termination in violation of Oklahoma public policy. Her petition made no mention of race, sex or religion, but alleged in substance only that she had been terminated based on the employee discount policy, that she had not stolen from defendants, that she had used the employee discount as she understood the policy and practice to be, and that defendants had not done training or counseling as to the proper use of the policy.

Plaintiff eventually obtained counsel and, on June 18, 2010, filed an amended petition which dropped any claim for wrongful termination based on Oklahoma public policy, but alleged the claims described above. Defendants then removed the case to this court.

Other facts or evidence are mentioned below as necessary to the particular issue being discussed.

## **DISCUSSION**

The standard for determining a motion for summary judgment is familiar. Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Viewing the evidence and any reasonable inferences that might be drawn in the light most favorable to the plaintiff, the nonmoving party, Swackhammer v. Sprint/United Mgmt. Co., 493 F.3d 1160, 1167 (10th Cir. 2007), the court concludes defendants' motion should be granted in part and denied in part.

As a threshold matter, the court notes the considerable difficulty caused by plaintiff's violation of the rules of this court relating to the form of its summary judgment response brief. Those rules require a moving party to begin its brief (as defendants did here) with a concise statement of the material facts which it maintains are undisputed. The facts are required to be numbered and must be supported by reference to the portion of the record upon which the movant relies for each asserted fact. L.Cv.R. 56.1(b). The brief in opposition must then begin with a concise statement of material facts which the responding party alleges to exist. "Each fact in dispute shall be numbered, shall refer with particularity to those portions of the record upon which the opposing party relies and, if applicable, shall state the number of the movant's facts that is disputed." L.Cv.R. 56.1(c). Plaintiff wholly ignored the latter requirement. She announced her facts were "diametrically opposed," suggested that

Akin's was "enthralled with its own spin," and then launched into plaintiff's separate description of the facts as she saw them, utterly ignoring the particular numbered facts suggested by defendants. The result is that the court is left with no clear indication from plaintiff of which facts she concedes and which she disputes. While the court has attempted to discern plaintiff's position despite the non-compliance,[2] plaintiff's counsel is admonished for his failure to follow the rules, with the consequent complication of the court's task.

One assertion of fact that plaintiff does not appear to dispute is that plaintiff was employed by defendant Akin's, but never by defendant Chamberlain. As a result, there is no basis for claim against Chamberlain on any theory plaintiff has identified and defendants' motion will be granted as to Chamberlain.

As noted above, plaintiff's claims against Akin's are these: (1) for race, sex and religious discrimination under Title VII and 42 U.S.C. § 1981, (2) for negligence in defendants' hiring, training and retention of its managers, and (3) intentional infliction of emotional distress.

Defendants challenge plaintiff's Title VII claims on the basis they were not timely filed. Title VII requires a plaintiff to file his or her claims within ninety days from the date the EEOC provides them with the right-to-sue letter. 42 U.S.C. § 2000e-5(f)(1); *see* Shikles v. Sprint/United Mgmt. Co., 426 F.3d 1304, 1317 (10th Cir. 2005) ("It is well-established that Title VII requires a plaintiff to exhaust his or her administrative remedies before filing

---

[2]*Had the court identified the problem earlier, plaintiff's brief would have been stricken.*

4

suit."). Defendant argues that it was not until plaintiff filed her amended petition in state court, some 350 days after receipt of her right to sue letter, that she actually filed suit on the potential claims identified in her EEOC filing. Plaintiff responds that she was initially proceeding *pro se* in state court, that defendant's knew what the basis for her claims was, and that defendant waived any objection in this regard by agreeing to the filing of the amended petition. Plaintiff's position is unpersuasive. Although she was *pro se* at the time her initial petition was filed, it was nonetheless necessary for her to timely file her Title VII claims. Garrett v. Selby Connor Maddux & Janer, 425 F.3d 836, 840 (10th Cir. 2005) (Even though a *pro se* litigant's pleadings are construed liberally, plaintiff must still "follow the same rules of procedure that govern other litigants.") (quotations and citations omitted).

There is nothing in the petition she filed that even hinted at a discrimination claim being the basis for her suit. Rather, the petition essentially focused on the claimed unfairness of Akin's applying its employee discount policy as it did and argued that the circumstances violated Oklahoma's public policy. Further, there is nothing in defendants' acquiescence to the filing of the amended petition that can be said to have waived any issue in this regard. To the contrary, defendants' consent to the filing was expressly conditioned on its reservation of the right to object to "the timeliness of the filing of Plaintiff's claims as set forth in her Amended Petition and any objection or defense that Plaintiff has failed to exhaust her administrative remedies as to some or all of her claims set forth in her Amended Petition." Defendants' Response [Doc. #1-20]. In short, the undisputed facts establish that plaintiff did not pursue her race, sex and religious discrimination claims within 90 days of her right to sue

5

letter. As a result, her Title VII claims are time barred and defendants' motion must be granted as to them.

Plaintiff's claims under 42 U.S.C. § 1981 are a different matter. Section 1981 claims are not subject to the exhaustion and filing requirements which apply to claims under Title VII. Martin v. Central States Emblems, Inc., 150 Fed. Appx. 852, 857 (10th Cir. 2005) ("Unlike Title VII claims, § 1981 claims can be commence without exhaustion of administrative remedies."). They are, however, limited to claims based on race rather than the other additional grounds available under Title VII. *See* Runyon v. McCrary, 427 U.S. 160, 167 (1976); Manzanares v. Safeway Stores, Inc., 593 F.2d 968, 971 (10th Cir. 1979)("Section 1981 does not apply to sex or religious discrimination."). Subject to that limitation, the standards for a § 1981 claim are substantially the same as for those under Title VII. Carney v. City and County of Denver, 534 F.3d 1269, 1273 (10th Cir. 2008). Section 1981 provides a potential remedy for both disparate treatment (here, wrongful termination) and hostile work environment. *See generally*, Faragalla v. Douglas Co. Sch. Dist. RE 1, Nos. 09-1393, 10-1433, 2011 WL 94540 (10th Cir. Jan. 12, 2011) and cases cited therein.

In resolving a summary judgment motion where, as here, a plaintiff relies on circumstantial evidence to prove discrimination, the court applies the McDonnell-Douglas burden-shifting framework. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under that framework, the plaintiff must first make out a prima facie case, i.e. produce evidence sufficient to create a material issue as to each element of the claim. Id. at 802. Once the plaintiff does so, the burden shifts to the employer to articulate some legitimate, non-

discriminatory reason for the challenged action. Id. If the defendant makes this showing, the plaintiff must then produce evidence that the defendant's justification is pretextual. Id. at 804; *see* Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1226 (10th Cir. 2000).

Insofar as plaintiff's § 1981 claim for disparate treatment (i.e. her alleged wrongful termination) is concerned, plaintiff must show that: (1) she belongs to a protected class, (2) she suffered an adverse employment action, and (3) the challenged action took place under circumstances giving rise to an inference of discrimination. EEOC v. PVNF, L.L.C., 487 F.3d 790, 800 (10th Cir. 2007). Here, defendants challenge only the third element.[3] They argue that the undisputed evidence shows Akin's implemented a new report (the "Point of Sale Exception Report") beginning in February 2009, and that, in May 2009, that report generated an "exception" ultimately traced to plaintiff. The local store manager, Cindy Dicken, researched the exception and noted the connection to plaintiff. Dicken then alerted the corporate office in Tulsa, Oklahoma, which initiated a further investigation revealing other transactions involving plaintiff and leading to the suspicion that plaintiff was improperly using her employee discount. Ms. Dicken then confronted plaintiff as to the concern, and plaintiff admitted she had been giving the discount to persons other than herself

---

[3]*Defendants describe the third element as requiring proof that "similarly situated employees were treated differently," relying on* Trujillo v. Univ. of Colorado Health Ctr., *157 F.3d 1211, 1215 (10th Cir. 1998). The appellate cases are not entirely consistent in how the elements of a prima facie case are described and they now appear to disapprove the exact formulation stated in* Trujillo, *at least to the extent it states a hard and fast rule as to what must be shown. See* Kendrick, *220 F.3d at 1227-29. However, it appears the general standard is as stated in the text above and that proof of similarly situated employees being treated differently is merely one of the ways in which a plaintiff might meet the more general standard.*

7

or her immediate family. Based on that admission, Joe Hoyt, Akin's Director of Operations, directed Dicken to terminate plaintiff's employment and Dickens did so.

So far as the court can determine given the nature of plaintiff's brief, she does not contest any of the facts related in the previous paragraph. She does, however, argue there is other evidence giving rise to an inference of discrimination, including evidence of other employees being treated differently as to their use of the employee discount.[4] At least one instance was near the time of her discharge and involved the taking of an improper "double discount" by an assistant manager. That instance resulted in some sort of written reprimand, but not termination. Plaintiff also alleges that, at some point, Dicken and others had directed her (or showed her how to) give the employee discount to persons not family members. Given that most of the evidence plaintiff relies on points to incidents prior to Akin's implementation of the new report, the question is close. However, taking together the evidence of prior deviations from the stated policy sanctioned by some supervisors, the incident where a white manager was disciplined in a less severe way, and the fact that the manager (Dicken) who flagged plaintiff for further investigation, based on the report, was also the one who had allegedly authorized plaintiff to give the employee discount to others and as to whom plaintiff has offered other evidence of harsh or wrongful conduct as to plaintiff, the court concludes plaintiff has offered sufficient evidence to satisfy the third

---

[4]*Virtually all of such instances, to the extent they are specifically described, preceded the implementation of the Point of Sale Exception Report in early 2009 and would not necessarily be evidence of disparate treatment during the time period relevant here. See* Kendrick, *220 F.3d at 1234.*

8

element of a prima facie test.[5]

Defendants have articulated a legitimate reason for plaintiff's termination—the violation of the discount policy—which shifts the burden to plaintiff to show some evidence of pretext. For largely the same reasons as stated with respect to the third element of plaintiff's prima facie case, the court concludes plaintiff has presented sufficient evidence of pretext to avoid summary judgment as to her § 1981 disparate treatment claim.

With respect to plaintiff's § 1981 claim based on a hostile work environment theory, the question is whether plaintiff has presented evidence sufficient to create a material issue as to whether "a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Sandoval v. City of Boulder, 388 F.3d 1312, 1327 (10th Cir. 2004). In making that determination, the court considers the work atmosphere both objectively and subjectively, looking at the circumstances from the perspective of a reasonable person in plaintiff's position. The inquiry includes the conduct's frequency and severity, whether it is physically threatening or

---

[5]*Defendants offer evidence (which plaintiff does not dispute) that, after plaintiff's termination, it did a further analysis of transactions over several months and concluded that plaintiff had 358 suspect transactions during the period examined. This far exceeded the number of such transactions for other employees and, in some circumstances, would undercut or eliminate any argument that plaintiff was treated differently from other similarly situated employees. However, it is clear this further investigation occurred after plaintiff was terminated, that the information was not known to defendants at the time of its decision, and is hence not a basis here for precluding a claim of different treatment. See Kendrick, 220 F.3d at 1231 ("[A] challenge of pretext requires [the court] to look at the facts as they appear[ed] to the person making the decision to terminate plaintiff.").*

humiliating, or a mere offensive utterance, and whether it unreasonably interferes with the plaintiff's work performance. Tademy v. Union Pacific Corp., 614 F.3d 1132, 1144 (10th Cir. 2008). Further, the relevant harassment is that which is directed to, or the result of, plaintiff's protected status. As plaintiff's Title VII claims are time barred and the only remaining federal claim is one for race discrimination under § 1981, that means the only harassing or hostile conduct pertinent here is that based on race. Id. at 1139 (noting that, in the context of a claim for racially hostile work environment, "harassment must be racial or stem from racial animus . . . .").

Here, the court concludes plaintiff's submissions are insufficient to create a material issue of fact as to racially-based hostile work environment. Plaintiff's submissions consist largely of general, conclusory statements by plaintiff which, in addition to being non-specific, also include general reference to sexual and religious grounds.[6] She identifies a comment made by one manager to the effect that plaintiff was "Afrocentric" and that her house must "look like a black African museum." Even assuming that comment was hostile or abusive, a single isolated comment is not ordinarily sufficient to create a hostile working environment. See Hicks v. Gates Rubber Co., 833 F.2d 1406, 1412 (10th Cir. 1987) ("To establish racial hostile work environment, . . . plaintiffs must prove more than a few isolated incidents of racial enmity.") (quotation and citation omitted). She also alludes to evidence of instances of differential treatment of her relative to other white employees. That evidence

---

[6]For example, her "timeline" states "I was constantly exposed to hostile racial, sexual and religious comments." [Doc. No. 25-1].

may well be relevant to her disparate treatment claim, but is not sufficient, in and of itself, to support a finding of hostile work environment under the standard referenced above. In sum, the court concludes summary judgment should be entered for defendants insofar as plaintiff asserts a § 1981 claim for race-based hostile work environment.

Plaintiff asserts a state law claim for negligence, claiming that Akin's was negligent in its hiring of managers and in its training of them. Defendants asserts there is insufficient evidence to create a justiciable issue as to such a claim. The court concurs. There is evidence that Akin's managers did not receive separate, formal training directed to the issue of discrimination, although they were provided with Akin's manuals and written policies prohibiting it. Such evidence is insufficient to create a material issue as to Akin's negligence. Beyond that, plaintiff relies on a lengthy list of her own statements, *see* Fact #31, Plaintiff's Brief [Doc. #25], to support her allegation that defendants were negligent. However, plaintiff concedes she has no personal knowledge of the training or screening that any manager for Akin's received and simply asserts that, based on various occurrences to which she objects, that the involved managers' training must have been inadequate for the conduct to have occurred. Such speculative testimony is not evidence of negligence in hiring or training. The court concludes defendants' motion should be granted as to plaintiff's negligence claim.

Plaintiff also asserts a state law claim for intentional infliction of emotional distress. In order to establish such a claim, a plaintiff must show (1) the defendants acted intentionally or recklessly; (2) the defendants' conduct was extreme and outrageous; (3) the defendants'

conduct caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe. Computer Publications, Inc. v. Welton, 49 P.3d 732, 735 (Okla. 2002). Here, the evidence proffered by plaintiff, even drawing all inferences from it in her favor, is insufficient to make out the necessary level of outrageous conduct.[7]

## CONCLUSION

Based on the foregoing, defendants' motion for summary judgment [Doc. Nos. 20 & 31] is: (1) **GRANTED** as to all claims against defendant Chamberlain, (2) **DENIED** as to plaintiff's § 1981 claim against Akin's for disparate treatment based on race, and (3) **GRANTED** as to all other claims of plaintiff against defendant Akin's.

**IT IS SO ORDERED**.

Dated this 25th day of April, 2011.

JOE HEATON
UNITED STATES DISTRICT JUDGE

---

[7]*The court acts as the gatekeeper with regards to the "outrageousness" element, which requires "proof that the defendant's conduct was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and that such conduct is regarded as atrocious and utterly intolerable in a civilized community."* Computer Publications, Inc., *49 P.3d at 735-36. No such conduct occurred here.*